**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KELLY N. BROGAN | * | Civil Action No.    26-546 |
| 554 Pointview Drive | | |
| Westerville, Ohio 43081 | * | |
| | | |
| Plaintiff | * | |
| | | |
| vs. | * | |
| | | |
| UNITED STATES DEPARTMENT OF | * | |
| EDUCATION | | |
| 400 Maryland Ave., S.W. | * | |
| Washington, D.C. 20202 | | |
| | * | |
| and | | |
| | * | |
| LINDA McMAHON, *in her official* | | |
| *capacity as Secretary of Education* | * | |
| 400 Maryland Ave., S.W. | | |
| Washington, D.C. 20202 | * | |
| | | |
| Defendants | * | |

---

**COMPLAINT**

Plaintiff, Kelly Brogan (the "Plaintiff"), submits this Complaint, alleging the following

against the United States Department of Education (the "Department") and Linda McMahon in her

official capacity as Secretary of Education (together with the Department, "Defendant"):

**The Parties**

1.    Plaintiff is an adult individual who resides in this District.

2.    Defendant United States Department of Education is a federal agency headquartered in

the District of Columbia with its principal office located at 400 Maryland Avenue, SW,

Washington, D.C. 20202.

1

3. Defendant Linda McMahon is the Secretary of Education. She is sued solely in her official capacity.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action because it is a case arising under federal law, see 28 U.S.C. § 1331, namely the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e) because this is an action against a federal agency, the Plaintiff resides here, and a substantial part of the events giving rise to the action occurred here.

## Summary of Action

6. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, which grants this Court jurisdiction to compel agency action unlawfully withheld or unreasonably delayed, and to hold unlawful and set aside agency actions, findings, and conclusions that are arbitrary, capricious, or otherwise not in accordance with law.

7. Plaintiff is an attorney and federal student loan borrower who, after more than a decade of public service and consistent compliance with her repayment obligations, has been wrongfully denied discharge of her remaining student loan balance pursuant to the Department of Education's Public Service Loan Forgiveness ("PSLF") program. 20 U.S.C. § 1087e(m); 34 C.F.R. § 685.219.

8. This lawsuit seeks to hold the Department accountable for the commitments it made to borrowers like Plaintiff who devoted their careers to public service in reliance on the government's promise: that after ten years of qualifying employment and payments on federal student loans, the remaining balance would be forgiven under the PSLF program. In reliance on that promise, Plaintiff chose a career in public service.

2

9. After more than ten years of qualifying public service as an attorney with the State of Ohio, Plaintiff was credited with 115 qualifying PSLF payments and, due solely to the Department's unlawful conduct, has been prevented from reaching the 120 payments required for loan forgiveness.

10. Plaintiff was on track to cross the 120-payment threshold and obtain loan forgiveness by January 2025.

11. In June 2024, Plaintiff submitted her 113th qualifying payment. The following month, in July 2024, a federal court enjoined continued implementation of the Saving on a Valuable Education ("SAVE") Plan, the Department-approved plan under which Plaintiff had been making qualifying payments. In response, the Department swept Plaintiff and millions of other SAVE borrowers into indefinite, involuntary administrative forbearance. Months spent in that forbearance did not count toward PSLF.

12. Plaintiff acted promptly at every turn to keep making payments and progress toward the 120-payment threshold. She applied to switch from the SAVE Plan to another qualifying repayment plan; when that application languished, she applied again. She also filed successive PSLF buyback applications, seeking to pay for each forbearance month and have it credited toward PSLF. The Department let each application sit unprocessed.

13. More than fifteen months have passed since Plaintiff submitted her first buyback application. That delay, approximately 450 days, is more than ten times the Department's own 45-day processing window. The application remains unprocessed.

14. Further, it took the Department more than a year, over six times the 60-day window reflected in its own guidance, to approve a new repayment plan for Plaintiff. While that application sat unprocessed, Plaintiff's account remained in administrative forbearance, foreclosing any

3

opportunity to make qualifying payments and effectively blocking her from completing the 120 payments required for PSLF forgiveness. By the time the Department finally approved the plan in January 2026, Plaintiff had already left public service for non-qualifying employment and could no longer make the final payments that a decade of public service had earned her. Then, in April 2026, without notice or explanation, the Department reduced her qualifying payment count from 115 to 114.

15.   The Department has unlawfully withheld and unreasonably delayed action on Plaintiff's buyback applications and subsequent PSLF forgiveness to which she is entitled, in violation of 5 U.S.C. § 706(1). Further, the Department has acted arbitrarily and capriciously, in violation of 5 U.S.C. § 706(2)(A), by reducing Plaintiff's qualifying payment count from 115 to 114 without notice or reasoned explanation, constructively denying her repayment plan and buyback applications through prolonged inaction, and imposing a new $1,326 monthly payment obligation, collectively operating as a de facto policy to obstruct or egregiously delay PSLF forgiveness.

## General Allegations

**A.      Public Service Loan Forgiveness (PSLF)**

16.   Congress created the PSLF program when it passed the College Cost Reduction and Access Act of 2007 ("CCRAA" or the "Act"), signed into law by President George W. Bush on September 27, 2007. The provisions relevant to the PSLF program are codified at 20 U.S.C. § 1087e(m), and are further defined in regulations at 34 C.F.R. § 685.219.

17.   Those provisions mandate that the Secretary of Education shall cancel the remaining principal and interest due on any Federal Direct Loan (including Direct Subsidized Loans, Direct Unsubsidized Loans, Direct PLUS Loans, and Direct Consolidated Loans) where: (i) the loan is not in default; (ii) the borrower has made 120 monthly payments on an eligible Federal Direct

Loan under a qualifying repayment plan; and (iii) the borrower was employed full-time in a public service job at the time each of those payments was made and at the time of forgiveness.

18. Under the statute, a "public service job" includes "a full-time job in . . . government" among other categories. 20 U.S.C. § 1087e(m)(3)(B)(i). The implementing regulation, in turn, defines "qualifying employer" to include "a Federal, State, local, or Tribal government organization, agency, or entity." 34 C.F.R. § 685.219(b). Attorneys employed by state agencies, including those providing legal services on behalf of the State of Ohio, fall squarely within these definitions.

19. The regulation further provides that, for any months in which a borrower postponed monthly payments under a deferment or forbearance while employed full-time at a qualifying employer, the borrower may obtain credit toward forgiveness for those months by making a payment equal to or greater than what would have been due on a qualifying repayment plan. 34 C.F.R. § 685.219(g)(6). This regulation is commonly referred to as the "buyback" provision.

20. Plaintiff satisfies each statutory and regulatory requirement for PSLF forgiveness, or would have satisfied them but for Defendant's unlawful conduct.

21. First, Plaintiff holds eligible loans. Her loans consist of Federal Direct Subsidized Loans and Federal Direct Unsubsidized Loans, both of which are eligible for forgiveness under PSLF, and none of which is in default.

22. Second, Plaintiff completed more than ten years of qualifying public service employment. From January 26, 2015 through September 20, 2025, she was employed full-time as an attorney with the State of Ohio, qualifying employment with a government organization under the plain terms of 20 U.S.C. § 1087e(m)(3)(B)(i) and 34 C.F.R. § 685.219(b) and certified as such by the Department. (Ex. 1).

23. Third, Plaintiff made or stood ready and able to make the 120 qualifying monthly payments required for PSLF forgiveness. But for Defendant's failure to timely process her repayment plan applications and PSLF buyback requests, and its maintenance of her account in administrative forbearance, Plaintiff would have reached the 120-payment threshold while still employed in public service and would have received the loan forgiveness to which she is entitled.

**B.  Plaintiff's PSLF Progress and the SAVE Injunction**

24. Plaintiff is an attorney who was employed by the State of Ohio from January 2015 through September 2025 in positions that qualified as public service employment under PSLF and were certified as such by the Department. (Ex. 1).

25. Plaintiff financed her legal education through the Federal Direct Loan Program, and throughout her ten years of qualifying public service she made her required monthly payments.

26. The Department contracts with various loan servicers to administer Federal Direct Student Loans, and during the relevant period it assigned most PSLF-track accounts, including Plaintiff's, to MOHELA (the trade name of the Higher Education Loan Authority of the State of Missouri).

27. MOHELA classified Plaintiff as a borrower pursuing PSLF forgiveness and, on that basis, periodically requested, and Plaintiff timely submitted, employer certifications confirming her full-time employment with a qualifying PSLF employer.

28. To receive credit toward the 120 qualifying payments required for PSLF, a borrower's monthly payment must be made under a qualifying repayment plan. 34 C.F.R. § 685.219. Plaintiff made her payments under the SAVE Plan, a qualifying repayment plan under that regulation. On June 15, 2024, Plaintiff made her 113th qualifying payment under the SAVE Plan in the amount of $897.94. (Ex. 2).

29. By July 2024, Plaintiff's qualifying payment count stood at 113, only seven payments short of the 120 required for PSLF forgiveness. That same month, after a federal court enjoined continued implementation of the SAVE Plan, the qualifying repayment plan in which Plaintiff was enrolled, the Department elected to respond to the injunction by placing all SAVE borrowers, including Plaintiff, into an indefinite involuntary administrative forbearance. Critically, Plaintiff's months in forbearance would not count toward the 120 qualifying payments required for PSLF. Given Plaintiff's proximity to forgiveness, the forbearance threatened to halt her progress on the eve of completion. (Ex. 3).

C. **Plaintiff's Payment Plan and PSLF Buyback Applications**

30. By November 2024, Plaintiff remained in administrative forbearance. Recognizing that the forbearance was likely to continue indefinitely, Plaintiff applied through the Department's online submission portal at studentaid.gov to switch from the SAVE Plan to another qualifying repayment plan so that she could resume making qualifying payments toward PSLF. To Plaintiff's knowledge, the portal did not generate any written confirmation of her submission. Plaintiff believes and therefore avers that this was due to ongoing, widely reported technical issues with the Department's online application portal during this period, including intermittent unavailability of the online application, which culminated in the Department's formal suspension of the online application portal in early 2025. The Department, which controls the portal and its underlying records, did not process that application.

31. In January 2025, Plaintiff completed her ten years of qualified public employment under PSLF. As she had always done, she submitted her paperwork to the Department certifying her public employment.

7

32. On February 4, 2025, she submitted a PSLF Reconsideration Request (Case No. 26928075), seeking to "buyback" the seven months (July 2024 through January 2025) during which her account had been placed in administrative forbearance following the SAVE injunction. (Ex. 4). Approval of this request would have allowed Plaintiff to make payments on each of those seven months, reach the required 120-payment threshold, and qualify for loan forgiveness.

33. Under 34 C.F.R. § 685.219(g)(6) and the Department's implementing guidance, PSLF "buyback" is available for periods during which a borrower had qualifying employment but was placed into deferment or forbearance on Direct Loans with a positive balance. Plaintiff sought to pay $897.94, the amount of her monthly SAVE payment, for each of the seven forbearance months, which would have brought her to the 120-payment threshold required for PSLF forgiveness. (Ex. 5). The Department has publicly represented that PSLF buyback requests should be processed within 45 days of submission. Despite the straightforward nature of the request, Plaintiff's buyback application remains unprocessed 450 days later - more than ten times the Department's own 45-day benchmark.

34. Plaintiff pursued two parallel paths to keep her PSLF progress on track: after submitting her buyback application, she also continued her efforts to switch into a qualifying repayment plan so that she could resume making qualifying payments. With her November 2024 repayment plan application still unprocessed, in March 2025 Plaintiff again applied to switch from the SAVE Plan to another qualifying repayment plan. Despite the Department having by then removed its online submission portal for repayment plan applications, Plaintiff persisted and submitted a manual application. (Ex. 6). That application, too, remained unprocessed for ten months, and Plaintiff remained unable to make qualifying payments in the interim.

35. The Department's guidance governs how servicers handle a pending repayment plan application. Upon receipt of the application, the servicer must place the borrower's account into a processing forbearance for up to 60 days while the application is under review, and months spent in that processing forbearance count as qualifying payments toward PSLF. If the application is not approved within 60 days, the account is automatically converted to a general administrative forbearance, reflecting the Department's own position that repayment plan applications should be processed within that 60-day window. (Ex. 7). Consistent with that guidance, Plaintiff was credited with two additional qualifying payments, bringing her total count to 115. The Department did not, however, process Plaintiff's repayment plan application within the 60-day window, leaving her account in administrative forbearance and unable to continue making qualifying payments.

36. With her buyback application still unprocessed as of July 2025, Plaintiff submitted a formal Feedback Case (Case No. 30341444) requesting an update. Although Federal Student Aid indicated that the matter would be "escalated," no substantive response or resolution followed. (Ex. 8).

37. On September 18, 2025, after the Department launched a new online buyback submission feature, Plaintiff submitted a second buyback application (Case No. 31445425). (Ex. 9). That request also remains unprocessed.

38. In addition to unsuccessful written correspondence and phone calls to the Department, in November 2025 Plaintiff sent a written demand via U.S. Mail to the Department of Education's Office of General Counsel, requesting prompt processing of her buyback application. (Ex. 10). Defendant failed to respond.

39. As a direct result of Defendant's inaction, Plaintiff was unable to complete the final qualifying payments required for PSLF while still employed in public service. In September 2025,

9

Plaintiff accepted a new position with a non-qualifying employer and left her qualifying public service employment with the State of Ohio.

40.  In January 2026, more than a year after Plaintiff first applied to switch repayment plans, eleven months after she submitted her first buyback application, and four months after she had left public service, the Department finally notified Plaintiff that her new repayment plan had been approved and that payments would resume in February 2026. (Ex. 11).

41.  Despite her eligibility for PSLF, Plaintiff has since been required to pay a new monthly obligation of $1,326. (Ex. 11).

42.  Then, in April 2026, the Department reduced Plaintiff's qualifying payment count from 115 to 114 without notice or explanation. (Ex. 12). That silence departed from the Department's usual practice of notifying borrowers of any change to their qualifying payment count through a "Qualifying Payment Update" letter. For example, the Department sent Plaintiff a Qualifying Payment Update letter dated February 1, 2025, reflecting a count of 113 qualifying payments, and another dated September 20, 2025, reflecting a count of 115 qualifying payments. (Exs. 13, 14). No such letter was sent in connection with the April 2026 reduction from 115 to 114. Plaintiff believes the removed month is April 2016, which now appears in her account history as non-qualifying because of a purported "Deferment or Forbearance" status on the due date. (Ex. 15). However, because the payment record in question is nearly ten years old, Plaintiff cannot locate independent documentation to verify the accuracy of that designation. Defendant, which is in sole possession of the underlying records, has never identified the month removed or the basis for its removal, leaving Plaintiff unable to meaningfully evaluate or challenge the reduction.

43.  It has now been 15 months, or approximately 450 days, since Plaintiff first submitted her PSLF buyback request, far exceeding any reasonable timeframe for adjudicating a straightforward

buyback application.  The Department's actions have not only thwarted the loan forgiveness Plaintiff earned; they have inflicted ongoing financial harm. Plaintiff must now also seek two additional forms of relief: reimbursement for the $3,978.00 made under her new repayment plan and redress for the Department's unexplained reduction of her qualifying payment count in April 2026.

## CLAIMS FOR RELIEF

### COUNT ONE
**5 U.S.C. § 706(1)**
**(Agency Action Unlawfully Withheld and/or Unreasonably Delayed)**

44.   Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

45.   Throughout the relevant period, Plaintiff was employed full-time by a qualifying public service employer as defined under the PSLF regulations, 34 C.F.R. § 685.219, and timely submitted her PSLF buyback applications while still employed in qualifying public service.

46. Plaintiff has complied with every statutory and regulatory requirement for loan forgiveness under the PSLF program, including completion of more than ten years of qualifying public employment, submission of all required employer certifications, 115 qualifying payments, and timely requests to buyback remaining payments pursuant to 34 C.F.R. § 685.219(g)(6) to meet the 120-payment threshold.

47.   Under 20 U.S.C. § 1087e(m)(1), Defendant has a mandatory, non-discretionary duty to forgive the remaining balances on federal student loans of any borrower who fully complies with the PSLF program requirements. The Secretary "shall cancel the balance of interest and principal due" on any such eligible loan (emphasis added).

48.   Fifteen months, or approximately 450 days, have passed since Plaintiff first submitted her buyback application, far exceeding any reasonable timeframe for adjudicating such a request.

11

More than fourteen months passed between Plaintiff's November 2024 application to switch from the SAVE Plan to another qualifying repayment plan and the Department's eventual approval in January 2026, far exceeding any reasonable processing timeframe, including the 60-day window reflected in the Department's own guidance.

49. Notwithstanding this passage of time, Defendant has unlawfully withheld agency action: it has failed to process Plaintiff's buyback applications, failed to permit her to make the remaining payments needed to reach the 120-payment threshold, and failed to discharge her remaining loan balance under PSLF.

50. Defendant's prolonged inaction has caused Plaintiff serious monetary harm, including monthly loan payments in the amount of $1,326 that she would not be paying had the Department processed her buyback applications and timely discharged her loans.

51. Plaintiff believes and therefore avers that the current Administration has unreasonably laid off or reassigned Department employees responsible for administering the PSLF program, and that the Department's lack of action regarding Plaintiff's applications and her repeated inquiries is due, at least in part, to this failure to maintain appropriate staff.

52. In any event, neither processing backlogs nor inadequate staffing excuses the Department's egregious and unreasonable delay of over a year in adjudicating Plaintiff's buyback application. The review required is not complex: Plaintiff has submitted every record necessary to process her application, and the Department's own records independently verify Plaintiff's qualifying employment, payment history, and eligibility for buyback credit. The Department's decisions regarding its own staffing and resource allocation cannot relieve it of its mandatory, non-discretionary duty under 20 U.S.C. § 1087e(m) to forgive the loans of borrowers, like Plaintiff, who have satisfied every requirement of the PSLF program.

12

53. Plaintiff is adversely affected by the Department's failure to act under 5 U.S.C. § 702 and is entitled to judicial review of Defendant's unlawful withholding and unreasonable delay.

54. No other adequate remedy exists to compel the Department's performance. The Higher Education Act provides no private right of action and Plaintiff's administrative efforts to resolve this matter have proven futile. Judicial review under the APA is Plaintiff's only avenue for relief. See 5 U.S.C. § 704.

55. Plaintiff is entitled to a judicial order, pursuant to 5 U.S.C. § 706(1), compelling Defendant to promptly process her buyback applications, accurately apply all qualifying payments, permit Plaintiff to make any remaining payments needed to reach the 120-payment threshold, and discharge the remaining balance of her loans under PSLF.

### COUNT TWO
### 5 U.S.C. § 706(2)(A)
### (Arbitrary and Capricious Agency Action)

56. Plaintiff incorporates by reference all the above allegations as if set forth fully herein.

57. Defendant has taken a series of arbitrary and capricious actions in the administration of Plaintiff's account. Without prior notice to Plaintiff and without any reasoned explanation, Defendant reduced Plaintiff's qualifying payment count from 115 to 114. Defendant has not identified which month was removed or the basis for its removal, depriving Plaintiff of any meaningful opportunity to evaluate or challenge the reduction.

58. In addition, by leaving Plaintiff's timely and repeated buyback applications unadjudicated for fifteen months, Defendant has constructively denied those applications and has adopted a de facto policy to obstruct or egregiously delay PSLF forgiveness. That constructive denial and de facto policy are arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A).

13

59.  Defendant has further imposed on Plaintiff a new monthly payment obligation of $1,326 without regard to her eligibility for PSLF forgiveness or the pendency of her buyback applications. Defendant's reduction of Plaintiff's qualifying payment count, its refusal to process Plaintiff's buyback applications, and its imposition of the $1,326 monthly payment collectively constitute arbitrary and capricious agency action within the meaning of 5 U.S.C. § 706(2)(A).

60.  Further, Plaintiff believes and therefore avers that the current Administration has unreasonably laid off or reassigned Department employees responsible for administering the PSLF program, and that the Department's arbitrary actions with respect to Plaintiff's account and its failure to respond to her repeated inquiries are due, at least in part, to this failure to maintain appropriate staff.

61.  Plaintiff is adversely affected by Defendant's arbitrary and capricious conduct within the meaning of 5 U.S.C. § 702 and is entitled to judicial review of the actions challenged in this Count.

62.  No other adequate remedy exists to set aside the Department's arbitrary and capricious actions. The Higher Education Act provides no private right of action and Plaintiff's administrative efforts to resolve this matter have proven futile. Judicial review under the APA is Plaintiff's only avenue for relief. See 5 U.S.C. § 704.

63.  Plaintiff is entitled to an order, pursuant to 5 U.S.C. § 706(2)(A), setting aside Defendant's actions and requiring Defendant to process her buyback applications, accurately apply all qualifying payments, permit Plaintiff to buyback any remaining payments needed to reach the 120-payment threshold, and discharge the remaining balance of her loans under PSLF.

**PRAYER FOR RELIEF**

64.  WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in her favor and against Defendant as follows:

65.  Declaring that Plaintiff is eligible for PSLF buyback under 34 C.F.R. § 685.219(g) for each of the months she spent in administrative forbearance, given that Plaintiff was employed full-time by a qualifying public service employer during each of the months for which buyback credit is sought;

66.  Declaring unlawful, pursuant to 5 U.S.C. § 706(1), Defendant's unreasonable delay and unlawful withholding in processing Plaintiff's buyback applications and subsequent discharge of her loans;

67.  Declaring unlawful and setting aside, pursuant to 5 U.S.C. § 706(2)(A):  Defendant's reduction of Plaintiff's qualifying payment count from 115 to 114 without notice or reasoned explanation; Defendant's constructive denial of Plaintiff's timely-submitted buyback applications, and de facto policy to obstruct or egregiously delay PSLF forgiveness; and Defendant's imposition of a $1,326 monthly payment obligation despite Plaintiff's eligibility to buyback qualifying months and obtain PSLF forgiveness;

68.  Compelling the Department to identify the specific month removed from Plaintiff's qualifying payment count in April 2026, provide a reasoned explanation for its removal, and restore the count to 115 if the removal cannot be justified, or, if the removal is shown to be justified, permit Plaintiff to buyback that month under 34 C.F.R. § 685.219(g)(6) and credit it toward the 120-payment threshold;

69.  Compelling the Department to promptly process Plaintiff's pending PSLF buyback applications and provide Plaintiff with the specific dollar amount required to buyback the

15

remaining qualifying months needed to reach the 120-payment threshold, reduced by the monthly payments Plaintiff has made since February 2026 under her current repayment plan;

70.  Compelling the Department to suspend Plaintiff's monthly payment obligation, and to refrain from treating any non-payment as a delinquency or default, pending resolution of this action;

71.  Compelling the Department, upon receipt of Plaintiff's buyback payment, to promptly grant forgiveness under the PSLF program, cancel the remaining balance of Plaintiff's federal student loans, ensure that the discharge and updated payment count are accurately reflected in Plaintiff's online accounts with both MOHELA and Federal Student Aid, and update any data furnished to consumer reporting agencies to accurately reflect the discharge and remove any inaccurate adverse entries;

72.  Retaining jurisdiction to ensure Defendant's compliance with the Court's orders;

73.  Awarding Plaintiff attorneys' fees, costs, and expenses under 28 U.S.C. § 2412(d); and

74.  Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *David C. Greer*
David C. Greer, Trial Attorney
Atty. Reg. No:   0009090
*Attorneys for Plaintiff Kelly N. Brogan*
BIESER, GREER & LANDIS, LLP
409 E. Monument Avenue, Suite 400
Dayton, OH  45402-1482
Tel: (937) 272-4459
E-mail: dcg@biesergreer.com
Fax: (937) 250-7773

4926-3945-3352, v. 1

16